Christopher J. Reichman  SBN 250485
Justin Prato SBN 246968
PRATO & REICHMAN, APC
8555 Aero Drive, Suite 303
San Diego, CA 92123
Telephone: 619-683-7971
chrisr@prato-reichman.com
justinp@prato-reichman.com

Attorneys for Class and Named Plaintiff
PAUL SAPAN

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL SAPAN, individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br>  vs.<br><br>DIRECTV, LLC, DIRECTV ENTERTAINMENT HOLDINGS LLC<br><br>        Defendants. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**Violation(s) of Telephone Consumer Protection Act of 1991**<br><br>**Jury Trial Demanded** |

  Plaintiff PAUL SAPAN ("Plaintiff" or "Mr. Sapan"), individually and on behalf of the Class described below, by their attorneys, make the following allegations based upon information and belief, except as to allegations specifically pertaining to Plaintiffs and their counsel, which are based on personal knowledge.

Plaintiffs bring this action for injunctive relief and damages against Defendant, demanding a trial by jury.

## JURISDICTIONAL ALLEGATIONS

1. Plaintiff at all times herein mentioned was a resident of the County of Orange, State of California.

2. Defendant DIRECTV, LLC is, and at all times herein mentioned was, a limited liability company created in Delaware and whose primary business address is El Segundo, California doing business in the County of Orange, State of California.

3. Defendant DIRECTV ENTERTAINMENT HOLDINGS LLC is, and at all times herein mentioned was, a limited liability company created in Delaware and whose primary business address is El Segundo, California doing business in the County of Orange, State of California.

4. Both Defendants, DIRECTV, LLC and DIRECTV ENTERTAINMENT HOLDINGS LLC will be collectively known as "DIRECTV" or "Defendants".

5. DIRECTV also has representatives located in and doing business in the State of California.

6. This case is filed pursuant to the Telephone Consumer Protection Act of 1991, 47 U.S.C. §227 et. seq. ("TCPA"). The U.S. Supreme Court recently decided that federals courts have federal question subject matter jurisdiction over such civil actions under 28 U.S.C. §§ 1331 and 1441. *Mims v. Arrow Fin. Services, LLC*, 132 S.Ct. 740, 753 (2012).

7. Plaintiff is informed and believes and, on such information, and belief alleges that at all times herein mentioned each employee, representative, officer, director, or consultant of any Defendant was acting as its agent.

## NATURE OF THE ACTION

8. Plaintiffs bring this class action against Defendant for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following class of persons:

> *All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendants and/or their agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an 'existing business relationship' at any time from August 29, 2018 to the present, including up to and through trial, and*

9. The TCPA was passed in order to regulate telemarketing by prohibiting, *inter alia*, phone calls to numbers on the federal Do Not Call Registry administered by the Federal Trade Commission (47 U.S.C. § 227(c), 47 C.F.R. § 64.1200(c)).

10. DIRECTV sells television services including the use of cold call telemarketing sales, often to residential phone numbers on the protected federal Do Not Call Registry

11. DIRECTV's telemarketing does not engage in TCPA compliance and the calls are made without prior express written consent or an established business relationship (47 C.F.R. § 64.1200(c) affirmative defenses).

12. DIRECTV is engaging in making illegal telemarketing calls prohibited by the Telephone Consumer Protection Act of 1991 ("TCPA"), which

gives victims of junk calls a private right of action to sue for the intrusion on their privacy. 47 U.S.C. § 227(c)(5).

13. The modus operandi is the same for all the calls in this case, DIRECTV calls various numbers in the United States to sell DIRECTV's services.

14. DIRECTV either has its employees make these sales calls or employs third-party telemarketing agents to make the sales call for DIRECTV.

15. DIRECTV and/or its agents do not check the federal Do Not Call Registry before making these sales calls nor perform any Do Not Call Registry compliance.

16. If a person, such as Plaintiff, answers a call made directly by a DIRECTV employee, that employee will solicit the recipient to sell DIRECTV's services.

17. If a person, such as the Plaintiff, answers the call from a third-party telemarketer working on DIRECTV's behalf they will speak to a live person who gathers information from the victim and who solicits the recipient to sell DIRECTV's services.

18. Plaintiff is informed and believes and alleges on information and belief that DIRECTV is aware that the telemarketing calls are being made to residential numbers on the Do-Not-Call Registry directly or by using agents.

19. Alternatively, Plaintiff is informed and believes and alleges on that information and belief that DIRECTV is willfully ignorant of the use telemarketing calls to residential numbers on the Do-Not-Call Registry.

20. These cold calls are made to massive lists of phone numbers in the United States with no regard for whether these numbers have been registered on the National Do-Not-Call Registry ("DNC") or not.

21. DIRECTV has intentionally violated the TCPA in a so-far successful attempt to sell their television packages for years.

## **FACTUAL DETAILS RE NAMED PLAINTIFF**

22. Defendants made sixteen (16) calls to PAUL SAPAN's home phone number (310-444-1999) wherein they tried to pitch their financial services on the following dates and times and using the following Caller ID ("CID") numbers:
- June 12, 2019, 10:03am CID 800-486-5000; Answered;
- June 12, 2019, 10:03am CID 800-487-5000; Answered;
- June 13, 2019, 11:30am CID 310-695-1807; Missed;
- June 13, 2019, 9:50am CID 310-695-1807; Answered;
- June 13, 2019, 10:54am 800-654-5000; Missed;
- June 13, 2019, 10:55am 800-654-5000; Answered;
- June 18, 2019, 10:21am CID 855-660-8920; Missed;
- June 18, 2019, 1:44pm CID 855-660-8920: Missed;
- June 18, 2019, 2:23pm CID 855-660-8920; Answered;
- June 19, 2019, 8:23am CID 855-660-8920; Missed;
- June 19, 2019, 11:13am CID 855-660-8920; Missed;
- June 19, 2019, 1142am CID 855-660-8920; Missed;
- July 1, 2019, 12:57pm CID 310-444-9681; Answered;
- July 1, 2019, 1:55pm CID 310-444-8526; Answered:
- July 6, 2019, 9:18am CID 310-444-8139; Answered;
- July 19, 2019, 11:07am CID 310-444-8291; Missed;

23. Mr. Sapan's residential line has been tariffed as a residential line since he was assigned it by the phone company and it has been continuously registered on the National "Do-Not-Call" Registry from at least December 22, 2007 to the present.

24. Mr. Sapan made a log of all the calls he received from DIRECTV during or shortly after receiving the calls and this log includes the date and time of the call and the Caller ID information.

25. A true and correct copy of this call log is attached hereto as Exhibit 1 and incorporated herein as if set forth verbatim and contains Mr. Sapan's detailed notes as to what happened during calls he answered.

26. Mr. Sapan never gave any DIRECTV or any other person, agent, or employee associated with DIRECTV express written permission to call him, nor does he have an established business relationship nor personal relationship with DIRECTV or any other person, agent, or employee associated with DIRECTV.

27. In just a the short one-month time span from June 12, 2019 to July 19, 2019, DIRECTV transmitted sixteen (16) telemarketing calls to Mr. Sapan's residential phone (310-444-1999) to try to sell its services.

28. On the first call answered by Mr. Sapan on June 12, 2019, Mr. Sapan spoke with "John" with "DIRECTV" offering Mr. Sapan a discount on his bill. "John" then set up an appointment to come to Mr. Sapan's house and said DIRECTV would call back to confirm.

29. Mr. Sapan did not agree to any call back.

30. On the second call on June 12, 2019, "John" called back to confirm Mr. Sapan's phone number, but the meeting never took place.

31. The next answered call was on June 13, 2019 in which a "Bernice" with "DIRECTV" tried to pitch TV services, however the call was dropped.

32. The next answered call was on June 13, 2019 from a "John" with "DIRECTV" pitching cheaper TV service to which Mr. Sapan hung up.

33. The next answered call was on June 18, 2019 from a "Mike" with "DIRECTV" pitching TV service to which Mr. Sapan hung up.

34. The next answered call was on July 1, 2019 from an "Alex Smith" with "DIRECTV" pitching TV service to which Mr. Sapan hung up.

35. The next answered call was on July 1, 2019 from an "Jeff" with "DIRECTV" pitching TV service to which Mr. Sapan hung up.

36. The next answered call was on July 6, 2019 from an "Sam" with "DIRECTV" pitching TV service to which Mr. Sapan hung up.

37. As to all of the "Missed" calls, Plaintiff alleges that they were made on behalf of or directly by DIRECTV because all of them except the last transmitted a Caller ID number that was the exact same as one or more of the calls from DIRECTV which Mr. Sapan answered and wherein the caller self-identified as being "with DIRECTV".

38. As to the last call, Plaintiff alleges was made by DIRECTV because of the similarity of the Caller ID number and the closeness in time to the answered calls which were confirmed to be made by DIRECTV.

39. Plaintiff pleads on information and belief that any person whom he spoke with on any "Answered" call is an employee directly for DIRECTV, or in the alternative is an employee of an agent of DIRECTV making illegal telemarketing calls at the direction and control of DIRECTV.

40. Plaintiff pleads on information and belief that to the extent DIRECTV relies on any agent or other entity to make prerecorded telemarketing calls on its behalf, DIRECTV has direct knowledge that such calls are being made to residential numbers and to numbers on the Do Not Call Registry without consent.

41. Alternatively, Plaintiff pleads on information and belief that DIRECTV ratified the making prerecorded telemarketing calls on its behalf by its agents by knowing of the illegal conduct and failing to repudiate the conduct.

42. Plaintiff alleges that since August 29, 2018 to present Defendant may have made more violative calls to Plaintiff's residential line that he was unable to log or identify at the time and expressly includes claims for them herein even though the specifics of the dates and times are unknown at this time without the aid of discovery.

Complaint

# LIABILITY OF DIRECTV, LLC

43. In the "Answered" calls Plaintiff spoke to a person who claimed to be from "DIRECTV" pitching Television services.

44. In all of the "Missed" calls the same Caller ID Number was used as at least one "Answered" call in which Plaintiff spoke to a person who claimed to be from "DIRECTV" pitching Television services.

45. On information and belief Plaintiff believes that DIRECTV, LLC is the formal corporate name for the company that is widely known as "DIRECTV" and holds itself out to the public as "DIRECTV" in its marketing and sales.

46. In all of the answered calls, the person to whom Mr. Sapan spoke stated they were calling on behalf of "DIRECTV".

47. Plaintiff believes that the persons he spoke to were direct employees of DIRECTV, LLC or direct agents or representatives of DIRECTV, LLC thereby making DIRECTV, LLC liable for the calls.

48. Plaintiff pleads on information and belief that the officers, managers and employees for DIRECTV, LLC knew about the illegal telemarketing calls as alleged above and in fact ordered such calls to be made.

# LIABILITY OF DIRECTV ENTERTAINMENT HOLDINGS LLC

49. Plaintiff pleads on information and belief that DIRECTV ENTERTAINMENT HOLDINGS LLC is the parent company of DIRECTV, LLC and they are functionally indistinguishable from one another.

50. DIRECTV ENTERTAINMENT HOLDINGS LLC holds all of the Federal Communications Commissions licenses essential to DIRECTV's operations. *See*, *In the Matter of Applications of AT&T Inc. (Transferor) and*

*DIRECTV Entertainment Holdings LLC (Transferee) For Transfer of Control of DIRECTV Enterprises, LLC*, FCC DA 21-838 (July 16, 2021)

51. DIRECTV ENTERTAINMENT HOLDINGS LLC and DIRECTV, LLC share the same exact location at 2260 Imperial Highway in El Segundo California.

52. Plaintiff pleads on information and belief that to the extent that DIRECTV ENTERTAINMENT HOLDINGS LLC is a different company from DIRECTV, LLC that DIRECTV ENTERTAINMENT HOLDINGS LLC is directly involved in the ownership and operation of DIRECTV, LLC.

53. Plaintiff pleads on information and belief that to the extent that DIRECTV ENTERTAINMENT HOLDINGS LLC is a different company from DIRECTV, LLC that DIRECTV ENTERTAINMENT HOLDINGS LLC ordered DIRECTV, LLC to make the alleged calls to Plaintiff and to the class in violation of the TCPA.

54. Plaintiff pleads on information and belief that to the extent that DIRECTV ENTERTAINMENT HOLDINGS LLC is a different company from DIRECTV, LLC that DIRECTV ENTERTAINMENT HOLDINGS LLC knew or recklessly ignored the fact that DIRECTV, LLC was engaged in making the calls to Plaintiff and to the class in violation of the TCPA.

55. Plaintiff pleads on information and belief that to the extent that DIRECTV ENTERTAINMENT HOLDINGS LLC is a different company from DIRECTV, LLC that DIRECTV, LLC is a direct agent of DIRECTV ENTERTAINMENT HOLDINGS LLC for the purpose of making the calls to Plaintiff and to the class in violation of the TCPA on behalf of DIRECTV ENTERTAINMENT HOLDINGS LLC.

56. Plaintiff pleads on information and belief that to the extent that DIRECTV ENTERTAINMENT HOLDINGS LLC is liable for the calls because of the above-described relationships with DIRECTV, LLC.

57. Plaintiff pleads on information and belief that the persons he spoke to on answered calls were also agents or representatives of DIRECTV ENTERTAINMENT HOLDINGS LLC thereby making DIRECTV ENTERTAINMENT HOLDINGS LLC liable for the calls.

58. Plaintiff pleads on information and belief that the officers, managers and employees for DIRECTV ENTERTAINMENT HOLDINGS LLC knew about the illegal telemarketing calls as alleged above and in fact ordered such calls to be made.

## FINAL LIABILITY ALLEGATIONS

59. Plaintiff pleads on information and belief that to the extent DIRECTV uses any agents to make calls, DIRECTV has ordered their agent to make the illegal telemarketing calls to numbers on the National "Do-Not-Call" Registry for its benefit.

60. Plaintiff pleads on information and belief that to the extent DIRECTV uses any agents to make calls, DIRECTV knew or reasonably should have known (implied agency), that its agents were was making the illegal telemarketing calls to numbers on the National "Do-Not-Call" Registry and using prerecorded voice calls to residential numbers.

61. Plaintiff pleads on information and belief that to the extent DIRECTV uses any agents to make calls, DIRECTV explicitly condoned the actions of such agents in making the illegal telemarketing calls to numbers on the National "Do-Not-Call" Registry and using prerecorded voice calls to residential numbers for its benefit by condoning their actions afterwards.

62. Plaintiff pleads on information and belief that to the extent DIRECTV uses any agents to make calls, DIRECTV explicitly hired by such agent in order to

make the illegal telemarketing calls to numbers on the National "Do-Not-Call" Registry and to use prerecorded voice calls to residential numbers for the benefit of DIRECTV.

## ACTUAL HARM & WILFUL AND KNOWING CONDUCT

63. The Telephone Consumer Protection Act of 1991 ("TCPA") was passed in order to regulate telemarketing and requires that no telemarketer may call any number registered on the National "Do-Not-Call" Registry without prior express consent or a prior established business relationship.

64. Defendant has intentionally violated the TCPA in a so-far successful attempt to sell television services.

65. Plaintiff has been harmed by the junk calls complained of herein by the invasion of his privacy,

66. Plaintiff has been harmed by the junk calls complained of herein by the direct waste of his time during the call itself, the indirect waste of time in having to break from other important tasks and spend time catching up after the junk call, the waste of telephone service which he and not Defendant must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

67. Plaintiff has been harmed by the calls he did not answer by the direct waste of his time in having to check the Caller ID while he was busy in meetings or with other projects before declining the call, the indirect waste of time in having to break from other important tasks and spend time catching up after these junk calls, the waste of telephone service which he and not Defendant must pay for, the costs of having to pursue legal remedies, and in the aggravation and consequent health effects of stress these illegal intrusions have caused.

68. During each of Defendant's calls, Plaintiff wanted to make or receive a call to/from someone else for his own personal or business reasons and was blocked from doing so by the line being tied up by Defendant.

69. As a proximate result of these intrusions, Plaintiff suffered and invasion of his privacy because the call should never have been transmitted to him and rang his private phone at his private residence.

70. Plaintiff alleges on information and belief that Defendant made the calls described above intentionally, in the sense that the number called was the one they meant to call in pitching their services.

71. Plaintiff alleges on information and belief that Defendant made the calls described above knowing that they were made in contravention of the TCPA and other telemarketing laws and regulations.

## CLASS ACTION ALLEGATIONS

72. **Description of the Class**: Plaintiffs bring this class action against Defendant for injunctive relief and damages and all other relief available at law and in equity on behalf of themselves and members of the following class of persons:

class 1:

*All persons and entities located within the United States of America who claim to be able to provide a phone bill or statement showing they were a residential telephone subscriber and that their number was registered on the National Do-Not-Call Registry to whose residential telephone Defendant and/or its agents transmitted two or more telemarketing calls in one calendar year without prior express written consent from the called party or an 'existing business relationship' at any time from August 29, 2018 to the present, including up to and through trial.*

73. Excluded from the Class are governmental entities, Defendant, any entity in which Defendant have a controlling interest, and Defendant' officers, directors, affiliates, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns. Also excluded from the Class is any judge, justice, or judicial officer presiding over this matter and the members of their immediate families and judicial staff.

74. Plaintiffs reserve the right to modify the Class description and the Class period based on the results of discovery.

75. **Numerosity**: The proposed Class is so numerous that individual joinder of all its members is impracticable. Due to the nature of the evidence of the number of calls made by Defendant, Plaintiffs believe that the total number of Class members is at least in the tens of thousands and members and the members are geographically dispersed across California and the United States. While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery, namely through Defendant' call records. The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

76. **Common Questions of Law and Fact Predominate**: There are many questions of law and fact common to the representative Plaintiff and the Class, and those questions substantially predominate over any questions that may affect individual Class members. Common questions of fact and law include, but are not limited to, the following:

    a. Whether Defendant transmitted two or more sales calls in any one calendar year to numbers on the National "Do-Not-Call" Registry.

b. Whether Defendant transmitted these calls without prior express consent from the owners of those lines or a business relationship with them established before the calls were made.

c. Whether the transmission of these calls was done willfully or knowingly by Defendant.

d. Whether agency relationships giving rise to TCPA liability exist amongst and between Defendant and its agents.

77. **Typicality**: Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all members of the Class have been similarly affected by Defendant' common course of conduct since Defendant' have repeatedly called the Class to sell their financial products.

78. **Adequacy of Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with experience in handling complex litigation who has been previously certified as class counsel. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Class and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to those of the Class.

79. **Superiority of a Class Action**: Plaintiffs and the members of the Class suffered, and will continue to suffer, intangible and tangible harm as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the class is impractical. Even if individual class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies engendered by Defendant's common course of conduct. The class action device allows a single court to provide the benefits of

unitary adjudication, judicial economy, and the fair and efficient handling of all class members' claims in a single forum. The conduct of this action as a class action conserves the resources of the parties and of the judicial system and protects the rights of the class member. Furthermore, for many, if not most, a class action is the only feasible mechanism that allows therein an opportunity for legal redress and justice

80. Adjudication of individual class member's claims with respect to Defendant would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication and could substantially impair or impede the ability of other class members to protect their interests.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION: TCPA VIOLATION
### CALL TO NUMBER ON THE NATIONAL "DO-NOT-CALL" REGISTRY
**(On Behalf of the Plaintiff Class)**

81. Plaintiffs reallege all paragraphs above and incorporates them herein by reference.

82. Plaintiffs are bringing this action pursuant to the provisions of the Telephone Consumer Protection Act of 1991 (47 U.S.C. §227 and 47 C.F.R. §64.1200 – "TCPA").

83. Subdivision (c) (2) of Section 64.1200 of Title 47 of the Code of Federal Regulations makes it unlawful for any person to "initiate any telephone solicitation" to "A residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations."

84. At all times relevant to this complaint, Plaintiff had registered his residential telephone number on the national do-not-call registry maintained by the U.S. Government.

85. Defendant have called Plaintiff's residential telephone line for solicitation purposes at least twice during a calendar year during the statutory period of the last 4 years, pursuant to 28 U.S.C. § 1658. These calls are the only calls known to Plaintiff at this time and Plaintiff states on information and belief, without yet having the aid of full discovery, that it is quite likely that Defendant has made many more violative calls to Plaintiff's residential telephone line. These calls were not made in error, nor did Defendant have express permission from Plaintiff to call, nor did Defendant have a personal relationship with Plaintiff. 37 C.F.R. § 64.1200 (c) (i), (ii), & (iii).

86. Subdivision (c)(5) of section 227 of title 47 of the United States Code permits a private right of action in state court for violations the National "Do-Not-Call" Registry rules promulgated thereunder. Plaintiff may obtain relief in the form of injunctive relief or Plaintiff may recover up to $500.00 for each violation, or both. If the court finds that Defendant' violations were willful or knowing, it may, in its discretion, award up to three times that amount.

WHEREFORE Plaintiffs pray for judgment against Defendant, and each of them, as follows:

On the FIRST CAUSE OF ACTION:

1. For an award of $500.00 for each violation of 47 U.S.C. § 227(c)(2);
2. For an award of $1,500.00 for each such violation found to have been willful;

On ALL CAUSES OF ACTION:

3. For attorney's fees pursuant to all applicable federal and state statutes;
4. For costs of suit herein incurred; and

Complaint

5. For such further relief as the Court deems proper.

DATED: August 29, 2022          **PRATO & REICHMAN, APC**

<u>/s/Christopher J. Reichman, Esq.</u>
By: Christopher J. Reichman, Esq.
**Prato & Reichman, APC**
Attorneys for Plaintiff,
Paul Sapan